Estado Libre Asociado de Puerto Rico
PANEL I

| ANTONIO AVILÉS RIVERA<br><br>Parte Recurrida<br><br>v.<br><br>MENNONITE GENERAL HOSPITAL, INC.<br><br>Parte Peticionaria | KLCE202500599 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aibonito<br><br>Civil Núm.:<br>B DP2017-0017<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de agosto de 2025.

Comparece el Hospital General Menonita, Inc. (Hospital Menonita o parte peticionaria) mediante recurso de *certiorari* presentado el 2 de junio de 2025. Solicita que revoquemos la *Resolución* emitida el 24 de abril de 2025, y notificada el 1 de mayo de 2025, por el Tribunal de Primera Instancia (TPI), Sala Superior de Aibonito. Mediante el referido dictamen, el TPI denegó la solicitud de desestimación parcial incoada por el Hospital Menonita.

El 23 de junio de 2025, la parte recurrida, Sr. Antonio Avilés Rivera, presentó escrito titulado *Contestación a Certiorari*. El 10 de julio de 2025, el Dr. Jorge Calderón Jiménez también compareció mediante alegato.

Examinado el recurso y los escritos presentados, resolvemos.

**I.**

El 30 de noviembre de 2017, el Sr. Antonio Avilés Rivera, la Sra. Carmen T. Ortiz Rodríguez, la Sociedad Legal de Gananciales compuesta por ambos, Yarilis y Jennifer, ambas de apellidos Avilés Ortiz (en conjunto, Sr. Avilés Rivera), presentaron una demanda sobre daños y perjuicios por impericia médica contra el Dr. Jorge

Número Identificador
SEN2025_____

Colón Martínez, el Dr. Jorge Calderón Jiménez, la Dra. Michelle M. Hoyos Iglesias y el Hospital Menonita. En síntesis, los demandantes alegaron que el joven de veinte años de edad, Anthony Avilés Ortiz -hijo y hermano de los demandantes- falleció como consecuencia de una infección pulmonar que presuntamente no fue identificada ni tratada médicamente por los doctores del Hospital Menonita. La demanda imputó responsabilidad por negligencia a cada uno de los médicos directamente. Además, en cuanto al Hospital Menonita, se alegó que:

2. Se demanda al Hospital General Menonita, Inc. (Aibonito, Puerto Rico), conocido como Hospital General Menonita, Inc. de Aibonito por ser una de las instituciones hospitalarias donde ocurren los hechos que dan lugar a la presente demanda y por **ser la entidad que contrató los servicios de algunos de los doctores, también demandados**, todos solidariamente responsables ante la parte demandante por los actos negligentes que más adelante se describen.

3. Los doctores Jorge Colón Martínez; Jorge Calderón Jiménez, Dra. Michelle M. Hoyos Iglesias fueron los **médicos contratado[s]** por el Hospital Menonita, que recibió y admitieron bajo su cuidado al joven Anthony Avilés entre los días 26 pasado 28 de diciembre de 2016 y que, un día después, debido a su negligencia, falleció.

[…]

8. El joven Anthony Avilés Ortiz, falleció como consecuencia de la **negligencia de los demandados, o de sus agentes o empleados**, quienes brindaron un diagnóstico y tratamiento incorrecto al joven y no le ordenaron en tiempo los análisis adecuados, en una ocasión ni realizaron la placa ordenada y en otra ni leyeron la placa [que] habían ordenado y que revelaba que tenía pulmonía bilateral, ni tampoco siguieron recomendación de realizar análisis del CT en tal negligencia que participaron todos los demandados.

9. Entre otros actos negligentes, los demandados cometieron los siguientes: diagnóstico y tratamiento incorrecto; análisis de placa incorrecta o falta de lectura de dicha placa; aplicación inadecuada de medicamentos o medicamentos en cantidades subóptimas; provocaron se acelerara la condición y enfermedad del paciente.

[…]

12. Todos los demandados responden solidariamente, vicariamente,    mancomunadamente    y    por    su

responsabilidad contractual y extracontractual. (Énfasis suplido).[1]

En su contestación a la demanda, el Hospital Menonita indicó que los tres médicos codemandados poseen privilegios clínicos en el hospital, pero son contratados por Emergency Services Group, Inc., siendo empleados de esa entidad, quien es la que responde por la negligencia imputada a éstos. El Hospital Menonita alegó afirmativamente que brindó el tratamiento, cuidado y atención que satisface las exigencias profesionales generalmente aceptadas y reconocidas por la profesión médica conforme a las prácticas prevalecientes en la medicina para las circunstancias particulares del caso. Adujo, además, que el Hospital Menonita, su personal de enfermería, técnico, administrativo, agentes y/o representantes actuaron a tenor con el estándar de cuidado médico aplicable. De otro lado, negó solidaridad entre los codemadados.[2]

Luego de varios trámites procesales, el 25 de febrero de 2025, el Sr. Avilés Rivera y la Dra. Michelle M. Hoyos Iglesias presentaron una *Moción informando transacción parcial y solicitando término para presentar moción conjunta de desistimiento voluntario con perjuicio*. En el escrito se informó que llegaron a un acuerdo transaccional que pone fin a las controversias habidas entre éstos y que el acuerdo transaccional que se formalizará será tanto en la relación interna como externa, según los casos de *Szendrey v. Hospicare,* 158 DPR 648 (2000); *Sagardía v. HAM,* 177 DPR 484 (2009); *Rodríguez v. Hospital Dr. Susoni,* 186 DPR 889 (2012).[3] También el 25 de febrero

---

[1] Apéndice del recurso, *Demanda,* págs. 1-6. El 2 de abril de 2021, se presentó una *Primera Demanda Enmendada,* con el fin de sustituir a la aseguradora designada con nombre ficticio por el Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Médico-Hospitalaria (SIMED). *Íd., Primera Demanda Enmendada,* págs. 14-17.

[2] Apéndice del recurso, *Contestación a Demanda,* págs. 7-18. El Hospital Menonita presentó *Contestación a Primera Demanda Enmendada* el 11 de mayo de 2021. *Íd., Contestación a Primera Demanda Enmendada,* págs. 18-25.

[3] *Íd., Moción informando transacción parcial y solicitando término para presentar moción conjunta de desistimiento voluntario con perjuicio,* págs. 26-27.

de 2025, se presentó la misma moción en cuanto al Dr. Jorge Calderón Jiménez.[4]

El 3 de abril de 2025, el Hospital Menonita presentó una *Moción de desestimación parcial de conformidad con acuerdos transaccionales celebrados entre la parte demandante y los codemandados Dra. Michelle Hoyos y Dr. Jorge Calderón Jiménez.* Alegó que el acuerdo transaccional celebrado entre la parte demandante y los dos médicos, unido a lo resuelto en *Fonseca, et al. v. Hosp. HIMA*, 184 DPR 281 (2012), tuvo el efecto de liberar al Hospital Menonita de cualquier responsabilidad atribuible a consecuencia de los alegados actos u omisiones negligentes en el tratamiento médico que dichos doctores codemandados brindaron al paciente. Indicó que las alegaciones contra el Hospital Menonita consisten en que fue una de las instituciones hospitalarias donde ocurrieron los hechos que dan lugar a la demanda y por ser la entidad que contrató los servicios de algunos de los doctores demandados. Apuntó que dichas alegaciones no constituyen un reclamo directo en contra del Hospital Menonita por algún acto negligente propio o de su personal, sino que éstas se relacionan exclusivamente con el tratamiento médico brindado por la Dra. Michelle M. Hoyos Iglesias y Dr. Jorge Calderón Jiménez, quienes no son empleados del Hospital Menonita y únicamente poseen privilegios clínicos. Por lo anterior, el Hospital Menonita adujo que procedía la desestimación de la causa de acción en su contra en cuanto a los actos u omisiones negligentes de la Dra. Michelle M. Hoyos Iglesias y Dr. Jorge Calderón Jiménez. Dedujo, además, que, ante la ausencia de alegaciones directas de negligencia, solo restaría dilucidar las alegaciones en contra del Hospital Menonita

---

[4] *Íd., Moción informando transacción parcial y solicitando término para presentar moción conjunta de desistimiento voluntario con perjuicio,* págs. 28-29.

relacionadas al alegado tratamiento negligente brindado al paciente por el Dr. Jorge Colón Martínez.[5]

El Sr. Avilés Rivera presentó *Moción en oposición a petición de codemandados Hospital Menonita para que se emita sentencia*. En esencia, sostuvo que, en lugar de emitir sentencia parcial, lo que corresponde es determinar el grado de contribución de cada uno de los codemandados, incluyendo los liberados, y deducir de la compensación los porcentajes atribuibles a los demandados liberados por acuerdo transaccional.[6]

En la *Resolución* recurrida, notificada el 1 de mayo de 2025, el TPI declaró "No Ha Lugar la desestimación parcial en este momento, en cuanto al Hospital General Menonita, Inc. por los alegados actos negligentes de los codemandados Dra. Michelle Hoyos Iglesias y el Dr. Jorge Calderón Jiménez". Específicamente, el foro primario expuso:

> Ante el hecho de que la parte demandante no le imputó responsabilidad al Hospital General Menonita por las actuaciones de los codemandados doctora Hoyos y doctor Calderón Jiménez y habiendo la parte demandante llevado a cabo una transacción parcial con los codemandados mencionados anteriormente, generalmente esto produciría el efecto de liberar al Hospital General Menonita de cualquier responsabilidad atribuible en el presente caso; pero al amparo de lo resuelto en el caso <u>Fonseca et al. v. Hosp. HIMA</u>, 184 DPR 281[,] sobre la doctrina de autoridad aparente, procede en este momento denegar la desestimación.
>
> En el caso de <u>Fonseca v. HIMA</u>, supra, del Tribunal Supremo, establece lo siguiente:
>
> "En el acuerdo, la parte demandante expresamente se reservó íntegramente el derecho de proseguir cualquier trámite post-sentencia en contra del codemandado HIMA, … a los fines de que el codemandado HIMA, el cual queda en el pleito y contra quien prosiguen los trámites post-sentencia, no será responsable de forma alguna por los daños que pudieran ser atribuibles a y/o hayan sido causados por los codemandados comparecientes. **El codemandado HIMA sólo**

---

[5] *Íd., Moción de desestimación parcial de conformidad con acuerdos transaccionales celebrados entre la parte demandante y los codemandados Dra. Michelle Hoyos y Dr. Jorge Calderón Jiménez,* págs. 30-37.

[6] *Íd., Moción en oposición a petición de codemandados Hospital Menonita para que se emita sentencia*, págs. 38-43.

**responderá a la parte demandante por los daños causados por sus propias acciones u omisiones negligentes, las acciones u omisiones negligentes de sus empleados y/o de aquellas personas por las cuales deba responder bajo cualquier doctrina legal vigente en Puerto Rico, o por la participación que en su momento se establezca compete a HIMA pagar según la sentencia emitida por el Tribunal de Primera Instancia."**

[…]

Este caso [Fonseca et al. v. Hosp. HIMA, supra] establece en referencia a [la] doctrina [de autoridad aparente], lo siguiente:

"*Los tribunales han impuesto responsabilidad a los hospitales por los actos de impericia médica cometidos por los médicos que, sin ser empelados del hospital, gozan del privilegio de usar las instalaciones para recluir a sus pacientes privados dependiendo de una distinción: si el hospital le asignó el paciente a ese médico no empleado o si se trata de un paciente privado del médico no empleado. Así, si la persona acudió directamente al hospital en busca de ayuda médica y éste le proveyó al paciente los facultativos médicos que lo atendieron, aplica la doctrina de autoridad aparente. En ese caso, el hospital responderá vicaria y solidariamente con el médico responsable del acto de impericia, sin importar que este último sea un empleado del hospital, o uno a quien el hospital le haya concedido una franquicia para brindar servicios médicos especializados a los pacientes del mismo, o uno que es miembro de la facultad (staff) del hospital y a quien este llama en consulta para atender el paciente*".

Por esta razón, determinamos que no procede la desestimación parcial en este momento.

[…]. (Negrillas, cursivas y subrayado original en la resolución).

Inconforme con lo resuelto, el 2 de junio de 2025, el Hospital Menonita presentó el recurso de epígrafe y apuntó el siguiente señalamiento de error:

Erró el Tribunal de Primera Instancia al declarar NO HA LUGAR la moción de desestimación parcial presentada por la [peticionaria] debido a que, como cuestión de derecho, interpretó incorrectamente lo resuelto en Fonseca v. HIMA, 184 D.P.R. 281 (2012), e interpretó incorrectamente cual fue la causa de acción alegada en contra del Hospital General Menonita, Inc.

La parte peticionaria argumenta que la demanda no imputa responsabilidad directa al Hospital Menonita por actuaciones institucionales o por actos del personal administrativo o de

enfermería del Hospital. Indica que la demanda solamente alegó que el Hospital Menonita tiene responsabilidad por: (1) ser una de las instituciones hospitalarias donde ocurren los hechos, (2) ser la entidad que contrató algunos de los doctores y (3) tener responsabilidad solidaria con el resto de los médicos demandados. Explica que, en lo que respecta a la Dra. Michelle M. Hoyos Iglesias y el Dr. Jorge Calderón Jiménez, la única potencial responsabilidad que el Hospital Menonita podría tener, de conformidad con las alegaciones, es bajo la doctrina de autoridad aparente, y que, por tratarse de una responsabilidad que es subsidiaria y solidaria, ésta cesó en el momento en que dichos demandados fueron librados de responsabilidad. Es decir, plantea que, en ausencia de responsabilidad propia del Hospital Menonita por actuaciones distintas a la de los médicos liberados, el relevo de responsabilidad que un demandante concede al médico con quien alcanza un acuerdo transaccional tiene el efecto de liberar de responsabilidad igualmente al hospital que solamente estaba llamado a responder bajo la doctrina de autoridad aparente. Dicho de otra forma, que la autoridad aparente deja de existir cuando el médico por quien el hospital viene obligado a responder vicaria y solidariamente ha sido liberado mediante transacción. Ante ello, entiende que el TPI debió desestimar las causas de acción presentadas en contra del Hospital Menonita por las alegaciones de impericia médica de los codemandados Dr. Jorge Calderón Jiménez y Dra. Michelle M. Hoyos Iglesias, determinando que solo queda por dilucidar las alegaciones de la demanda en contra de la clínica relacionadas con el presunto tratamiento negligente brindado al paciente por el codemandado Dr. Jorge Colón Martínez.

Por su parte, en la *Contestación a Certiorari,* el Sr. Avilés Rivera reprodujo los argumentos esbozados en su *Moción en oposición a petición de codemandados Hospital Menonita para que se*

*emita sentencia.* También mencionó que, con el propósito de establecer la relación existente entre los médicos codemandados y el Hospital Menonita, anunció como prueba el contrato entre el Hospital Menonita y la Sala de Emergencias, y los contratos de los nombramientos de los doctores codemandados.

## II.

## A.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[7]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.[8] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un

---

[7] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[8] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40[9], se justifica nuestra intervención. Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la

---

[9] El Reglamento del Tribunal de Apelaciones del 2004, según enmendado, fue derogado y sustituido por el Reglamento del Tribunal de Apelaciones que comenzó a regir el 16 de junio de 2025, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025). El presente recurso se radicó durante la vigencia del Reglamento del Tribunal de Apelaciones de 2004, por lo cual este es el reglamento que aplica al caso.

discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[10]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[11] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B.**

El Tribunal Supremo ha establecido que los foros revisores no interfieren con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[12] Además, se requiere que la intervención en esta etapa evite un perjuicio sustancial.[13]

La discreción judicial se define como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión Justiciera".[14] El ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad.[15] Así pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.[16]

---

[10] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).

[11] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

[12] *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular*, supra, pág. 155.

[13] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[14] *Rivera et al. v. Arcos Dorados et al.,* supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657–658 (1997).

[15] *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 272 (2021); *Rivera y otros v. Bco. Popular*, supra.

[16] *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 435 (2013); *Bco. Popular de P.R. v. Mun. de Aguadilla*, supra, pág. 658.

El Tribunal Supremo ha expresado que un tribunal abusa de su discreción:

> [...] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[17]

**C.**

El Artículo 1803 del Código Civil, 31 LPRA ant. sec. 31 LPRA sec. 5142[18], recoge el principio de responsabilidad vicaria por virtud del cual, entre otros supuestos, un patrono podría ser responsabilizado extracontractualmente por los actos negligentes cometidos por alguno de sus empleados.

El citado artículo constituye una excepción especial al principio de la responsabilidad personal por los actos propios y solo puede aplicarse a los casos incluidos específicamente en el mismo.[19] De igual forma, establece una presunción legal de responsabilidad de las personas citadas en él. En atención a las relaciones de autoridad o superioridad que mantienen con los autores del daño causado, la ley presume que le es imputable la causa de aquel por su propia culpa o negligencia.[20]

La causa de acción establecida por Artículo 1803 del Código Civil, *supra*, consiste fundamentalmente en la culpa *in vigilando, in instruendo o in eligiendo* atribuible a las personas designadas estatutariamente como responsables.[21] Se establece, pues, una

---

[17] *SLG ZapataRivera v. J.F. Montalvo*, supra, citando a *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009)).

[18] El *Código Civil de Puerto Rico* de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como *Código Civil de Puerto Rico* de 2020, 31 LPRA sec. 5311 *et seq.* Los hechos que originan la presente controversia tomaron lugar durante la vigencia del Código Civil de 1930, por lo cual esta es la ley que aplica al caso.

[19] *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 486 (2022).

[20] *Íd.*

[21] *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 907 (2012).

presunción de culpa que puede consistir en una falta de vigilancia (culpa *in vigilando*), en una falta de instrucción (culpa *in instruendo*) o en una desacertada elección (culpa *in eligiendo*).[22] Es decir, que, de haber sido el patrono diligente en vigilar, instruir o escoger a sus empleados, el daño no hubiese ocurrido.[23] Para activar esta presunción de culpa del patrono, un demandante debe establecer *prima facie*: (1) una relación de dependencia entre el patrono y el empleado, (2) que el empleado actuó en el desempeño de los ramos de su oficio con el propósito de servir y proteger los intereses del patrono, y que (3) el empleado tuvo culpa en el desempeño de esas funciones.[24] El patrono puede liberarse de esta responsabilidad si demuestra que empleó toda la diligencia de un buen padre de familia.[25]

Al amparo de la doctrina de responsabilidad vicaria del Artículo 1803 del Código Civil, *supra*, los hospitales pueden ser responsables frente a un perjudicado por la falta de pericia atribuible al personal del hospital en el ámbito de sus funciones.[26]

Se reconoce que las instituciones hospitalarias tienen el deber de ejercer el cuidado y las medidas previsoras que una persona razonablemente prudente desplegaría ante determinadas situaciones, utilizando como criterio la buena práctica generalmente reconocida por la profesión.[27] Su responsabilidad no es absoluta, pues no tienen la obligación de prever todo peligro imaginable.[28] Se limita a aquellos riesgos que con algún grado de probabilidad serían anticipables para una persona prudente y razonable.[29]

---

[22] *Íd.*

[23] *Cruz Flores et al. v. Hosp. Ryder et al.*, supra.

[24] *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 983 (2021).

[25] *Cruz Flores et al. v. Hosp. Ryder et al.*, supra.

[26] *Íd.*, págs. 488-489; *Márquez Vega v. Martínez Rosado*, 116 DPR 397, 404-405 (1985).

[27] *Cruz Flores et al. v. Hosp. Ryder et al.*, supra, pág. 487-488.

[28] *Íd.*

[29] *Íd.*

Al momento de adjudicar responsabilidad vicaria a los hospitales por los actos de los médicos que laboran en su institución, es importante considerar la relación jurídica existente entre estos.[30] La responsabilidad vicaria del hospital incluye los actos de aquellos médicos que son sus empleados; los de aquellos médicos, que, aunque no forman parte de su fuerza laboral, son parte de la facultad o *staff*, encontrándose disponibles para consultas de otros médicos; y la de aquellos médicos que sin ser empleados gozan de privilegios en la institución para recluir a sus pacientes privados. Los hospitales responden conjuntamente con los **concesionarios de franquicias exclusivas para prestar servicios en el hospital cuando cometen actos de impericia médica**.[31] Son ejemplos de estos concesionarios los anestesiólogos, radiólogos y **proveedores de servicios de sala de emergencia**.[32] **Respecto a éstos, el hospital es responsable por haber seleccionado a ese personal y tenerlo ofreciendo servicios a los pacientes**.[33]

Respecto a los médicos que sin ser empleados del hospital, gozan del privilegio de utilizar las instalaciones de la clínica, el hospital será responsable, **bajo la doctrina de autoridad aparente**, si asignó al paciente a ese médico, y no cuando se trata de un paciente privado del médico con privilegios. Bajo la mencionada doctrina, el hospital responderá vicaria y solidariamente con el médico responsable del acto de impericia, sin importar que este último sea un empleado propiamente del hospital, o uno a quien el hospital le haya concedido una franquicia para brindar servicios médicos especializados a los pacientes del mismo, o uno que es miembro de la facultad (staff) del hospital y a quien este llama en

---

[30] *Íd.*; *Fonseca et al. v. Hosp. HIMA*, 184 DPR 281, 288 (2012).
[31] *Íd.*, pág. 289; *Márquez Vega v. Martínez Rosado*, supra; *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 515-516 (2009).
[32] *Sagardía de Jesús v. Hosp. Aux. Mutuo*, supra.
[33] *Íd.*

consulta para atender al paciente.[34] Esta norma responde a la garantía implícita que ofrece el hospital de que el doctor que va a atender al paciente es uno competente y apto para prestar asistencia médica.[35] Además, responde al hecho de que el paciente acudió directamente al hospital, estableció una relación principal con el hospital y no tuvo ninguna participación en la selección de los doctores.[36] En cambio, cuando la víctima de impericia en un paciente privado del médico con privilegios, el hospital solo responde por su propia negligencia y no vicariamente.[37]

Los hospitales también responden por políticas institucionales que obstaculicen el cuidado de los pacientes. De igual forma, los hospitales responden por los daños ocasionados por no tener disponible el equipo básico necesario para atender situaciones previsibles o por tenerlo en estado obsoleto o deficiente. En caso de que la responsabilidad del hospital concurra con la responsabilidad del médico, la responsabilidad del primero es solidaria con el segundo sin menoscabo de la determinación de los grados exactos de culpa en la relación interna entre ambos, a los fines de obtener reembolso directo en proporción a esa responsabilidad.[38]

Por último, en el contexto de responsabilidad extracontractual y solidaridad legal, en *Fonseca et al. v. Hosp. HIMA*, supra, el Tribunal Supremo resolvió que el hecho de que un demandante libere de responsabilidad a uno de los codemandados mediante un acuerdo transaccional no necesariamente significa que relevó a los otros codemandados, si esto último no está dispuesto claramente en el acuerdo. Por lo tanto, el demandante podría continuar su

---

[34] *Fonseca et al. v. Hosp. HIMA*, supra, 289-290.
[35] *Sagardía de Jesús v. Hosp. Aux. Mutuo*, supra, pág. 513.
[36] *Íd.* pág. 514.
[37] *Cruz Flores et al. v. Hosp. Ryder et al.*, supra, pág. 490.
[38] *Fonseca et al. v. Hosp. HIMA*, supra, pág. 288; *Núñez v. Cintrón*, 115 DPR 598, 606 (1984).

reclamación contra los demás codemandados. Asimismo, los efectos de este tipo de contrato transaccional dependen de lo pactado entre las partes, en lo que respecta a la relación interna entre codemandados solidarios y la relación externa entre codemandados y demandantes. Resaltó el Tribunal que lo decisivo es la intención de las partes sobre los efectos de la transacción.[39]

Específicamente, al interpretar el acuerdo transaccional habido entre las partes en el caso de *Fonseca,* el Tribunal Supremo expuso:

> Al aplicar el acuerdo transaccional a estos hechos, vemos que los demandantes liberaron de toda responsabilidad a los médicos codemandados por la muerte de la Sra. Iris Fonseca, tanto en la relación externa frente a las demandantes como en la relación interna frente a HIMA. (...). Respecto a HIMA, las demandantes se reservaron la facultad de proseguir la acción en su contra, pero únicamente por la negligencia propia de HIMA o de sus empleados, independiente de la negligencia de los médicos codemandados. Como discutimos anteriormente, **el foro de instancia no le adjudicó grado de responsabilidad a HIMA ni encontró que hubiera incurrido en negligencia. Al contrario, le impuso responsabilidad solidaria solo por los actos negligentes de los médicos codemandados**. Como a estos últimos los relevaron de toda responsabilidad, nos vemos forzados a concluir que las demandantes también relevaron a HIMA, *pues este era responsable solidariamente solo por los actos negligentes de los médicos codemandados y no incurrió en negligencia propia.* (Negrillas suplidas. Cursivas en el original).[40]

### III.

Tratándose el presente caso de la denegatoria de una moción de carácter dispositivo, la Regla 52.1 de Procedimiento Civil, *supra,* nos faculta a expedir el auto solicitado. Sin embargo, ello está sujeto al ejercicio de nuestra discreción en atención a los criterios dispuestos en la Regla 40 de nuestro Reglamento, *supra.* Tras revisar el recurso instado por el Hospital Menonita, y a la luz de los

---

[39] *Íd.,* pág. 291.
[40] *Íd.,* pág. 299.

criterios (A), (B) y (E) de la citada Regla 40, resolvemos expedir y revocar la resolución recurrida.

En síntesis, el Hospital Menonita plantea que no existen alegaciones directas en contra de la institución hospitalaria, por lo cual, entienden que al demandante relevar al Dr. Jorge Calderón Jiménez y la Dra. Michelle M. Hoyos Iglesias de su culpa mediante el acuerdo transaccional, ello a su vez relevó al Hospital Menonita de cualquier reclamación en su contra por los actos u omisiones negligentes de los mencionados médicos codemandados. Partiendo de la premisa de que no existen alegaciones directas de negligencia en contra de la clínica, el Hospital Menonita razona que solo restaría dilucidar las alegaciones en contra de dicha institución hospitalaria relacionadas al alegado tratamiento negligente brindado al paciente por el Dr. Jorge Colón Martínez.

Conforme la normativa establecida en el presente caso, a tenor con la doctrina de autoridad aparente, si una persona acude directamente al hospital en busca de ayuda médica y éste le provee al paciente los médicos que lo atendieron, el hospital responde vicaria y solidariamente con el médico responsable del acto de impericia, sin importar que el médico sea empleado del hospital, o uno a quien se le haya concedido una franquicia para brindar servicios médicos especializados a los pacientes del hospital, o uno que es miembro de la facultad *(staff)* del hospital y a quien este llama en consulta para atender el paciente. Respecto a los concesionarios de franquicias, el hospital es responsable por haber seleccionado a ese personal y tenerlo ofreciendo servicios a los pacientes.

Por otro lado, y también de conformidad con la doctrina jurídica vigente, el hecho de que un demandante libere de responsabilidad a uno de los codemandados mediante un acuerdo transaccional no necesariamente significa que relevó a los otros codemandados, si esto último no está dispuesto claramente en el

acuerdo. Ello significa que el demandante podría continuar su reclamación contra los demás codemandados.

Conforme las alegaciones de la demanda del presente caso, se incluyó como codemandado al Hospital Menonita "por ser una de las instituciones hospitalarias **donde ocurren los hechos** que dan lugar a la presente demanda y por **ser la entidad que contrató los servicios de algunos de los doctores, también demandados**, todos solidariamente responsables ante la parte demandante por los actos negligentes que más adelante se describen". (Énfasis suplido). Esto es, al Hospital Menonita se le atribuyó responsabilidad por seleccionar a ese personal y mantenerlo ofreciendo servicios a los pacientes. A su vez, la demanda imputa "**negligencia de los demandados, o de sus agentes o empleados**" por las actuaciones u omisiones que presuntamente culminaron en el fallecimiento del paciente.

De otro lado, las mociones que informaron al TPI que el Sr. Avilés Rivera, la Dra. Michelle M. Hoyos Iglesias y el Dr. Jorge Calderón Jiménez llegaron a un acuerdo transaccional que pone fin a las controversias habidas entre éstos, nada expresan en cuanto a la causa de acción directa presentada contra el Hospital Menonita por su negligencia propia, por las presuntas actuaciones negligentes o culposas de sus agentes o empleados.

Siendo así, concluimos que el acuerdo transaccional que liberó de responsabilidad a la Dra. Michelle M. Hoyos Iglesias y el Dr. Jorge Calderón Jiménez tuvo el efecto de liberar al Hospital Menonita de responsabilidad por las omisiones u actuaciones de dichos médicos codemandados. Sin embargo, existen alegaciones directas contra el Hospital Menonita, distintas a las alegaciones presentadas en contra de los médicos liberados.

En virtud de lo anterior, y toda vez que el demandante liberó de toda responsabilidad a la Dra. Michelle M. Hoyos Iglesias y el Dr.

Jorge Calderón Jiménez, resolvemos que el TPI incidió al negarse a desestimar la reclamación en cuanto al Hospital Menonita por los alegados actos negligentes de dichos médicos codemandados. Por tanto, revocamos la resolución recurrida, en tanto ésta denegó la desestimación de la demanda en este aspecto. Procede, pues, desestimar la demanda en cuanto al Hospital Menonita **solamente** respecto a cualquier responsabilidad atribuible a ésta a consecuencia de los alegados actos u omisiones negligentes de los codemandados Dra. Michelle M. Hoyos Iglesias y el Dr. Jorge Calderón Jiménez.

Ahora bien, precisamos que el Hospital Menonita no queda relevado de las alegaciones relacionadas con sus propias acciones u omisiones negligentes, así como tampoco por las alegaciones relacionadas al presunto tratamiento negligente brindado al paciente por el codemandado Dr. Jorge Colón Martínez. De tal forma, se mantiene la causa de acción presentada contra el Hospital Menonita atribuible a sus propias acciones u omisiones negligentes y por el presunto tratamiento negligente brindado al paciente por el codemandado Dr. Jorge Colón Martínez.

**IV.**

En virtud de lo antes expuesto, expedimos el auto de *certiorari* y revocamos la resolución recurrida. Se desestima la demanda en cuanto al Hospital Menonita **solamente** respecto a cualquier responsabilidad atribuible a ésta a consecuencia de los alegados actos u omisiones negligentes de los codemandados Dra. Michelle M. Hoyos Iglesias y el Dr. Jorge Calderón Jiménez. Se mantiene la causa de acción presentada contra el Hospital Menonita atribuible a sus propias acciones u omisiones negligentes y por el presunto tratamiento negligente brindado al paciente por el codemandado Dr. Jorge Colón Martínez.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del

Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones